**Case No. 14-4057**

IN THE

# United States Court of Appeals

## FOR THE TENTH CIRCUIT

◆◆◆

GERRY A. ADAMS,

*Plaintiff-Appellant,*

—v.—

AMERICAN MEDICAL SYSTEM, INC.; CALDERA MEDICAL, INC.,

*Defendants-Appellees.*

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF UTAH (SALT LAKE CITY)
HONORABLE TED STEWART
D.C. NO. 2:13-CV-00604-TS

## BRIEF FOR PLAINTIFF-APPELLANT

DAVID M. WILKINS
HUNTSMAN, LOFGRAN
 & FULLER, PLLC
623 East Fort Union Boulevard,
 Suite 201
Midvale, Utah 84047
(801) 838-8900
david@huntsmanlofgran.com

*Attorneys for Plaintiff-Appellant*

July 28, 2014

**ORAL ARGUMENT REQUESTED**

# I. CORPORATE DISCLOSURE STATEMENT

Plaintiff/Appellant Gerry A. Adams is an individual.  As such, a corporate disclosure statement is not required in accordance with Rule 26.1 of the Federal Rules of Appellate Procedure.

## II. TABLE OF CONTENTS

I.      COROPORATE DISCLOSURE STATEMENT...........................................................i

III.    TABLE OF AUTHORITIES...............................................................iii, iv

IV.     STATEMENT OF RELATED CASES  .................................................. v

V.      JURISDICTIONAL STATEMENT........................................................ vi

VI.     STATEMENT OF THE ISSUESPRESENTED FOR REVIEW........................... vii

VII.    STATEMENT OF THE CASE ............................................................1-5

VIII.   SUMMARY OF ARGUMENT ........................................................... 6

IX.     ARGUMENT ...................................................................7-20

X.      CONCULUSION ...............................................................20-21

XI.     STATEMENT REGARDING ORAL ARGUMENT ........................................... 22

XII.    CERTIFICATE OF COMPLIANCE .................................................... 23

XIII.   CERTIFIACTE OF DIGITAL SUBMISSION.................................................... 24

XIV.    CERTIFICATE OF SERVICE............................................................ 25

XV.     ADDENDUM............................................................ 26

## III. TABLE OF AUTHORITIES

### CASES

*Ash Creek Mining Co. v. Lujan, 969 F.2d 868, 870 (10th Cir. 1992)*.................................7

*Ashcroft v.Iqbal, 556 U.S. 662, 679 (2009)*........................................................9

*Bangerter v. Orem City Corp. 45 F.3d 1491, 1502 (10th Cir. 1995)*............................7, 8

*Bell Atlantic Corp. v Twombly, 550 U.S. 544, 555 (2007)*...........................................9, 10

*Branch v. Tunnell, 14 F.3d 449, 453-54 (9th Cir. 1994)*.................................................12

*Brooks v. Blue Cross & Blue Shield of Florida, Inc., 116 F.3d 1364, 1369*

*(11th Cir. 1997)*...............................................................................................13

*Brown v. Sears Roebuck & Co., 328 F.3d 1274, 1278 (10th Cir. 2003)*...................... 11, 12

*Conley v. Gibson, 355 U.S. 41, 45-46, (1957)*.......................................................7, 9

*Cortec Indus., Inc. v. Sum Holding L.P., 949 F.2d 42, 48, (2d Cir. 1991)*......................12

*Daniels v. Gamma West Brachytherapy, LLC., 221 P.3d 256, 266*

*(Utah 2009)*....................................................................................................14, 15

*Erie Railroad Co. v. Tompkins, 304 U.S. 64 (1938)*.........................................................11

*Housley v. Dodson, 41 F.3d 597, 598 (10th Cir. 1994)*.......................................................7

*Myers v. McDonald, 635 P.d 84, 86 (Utah 1981).*......................................................14, 15

*New Beckley Mining Corp. v United Mine Workers or Amer.,18 F.3d 1161,*

*1164 (4th Circ. 1994)*.........................................................................................12

*Pension Benefits Guar. Corp. v White Consol. Indus., Inc.*, 987 F.2d 1192, 1196-97 (3rd Cir. 1993) ................................................................................................ 12

*Romani v. Shearson Lehman Hutton*, 929 F.2d 875, 879 n.3 (1st Cir. 1991).................... 12

*Russell Packard Dev. Inc. v. Carson*, 108 P.3d 741, 746 (Utah 2005)............................ 14

*Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974) ............................................................ 7, 10

*130 F.3d 1381, 1384-85 (10th Cir. 1997)* ........................................................... 12

*Venture Assoc. Corp. v. Zenith Data Systems Corp.*, 987 F.2d 429, 431 (7th Cir. 1993) .......................................................................................................... 12

*Weiner v. Klais & Co., Inc.*, 108 F.3d 86, 89 (6th Cir. 1997) ........................................... 12

## COURT RULES

FED. R. APP. 4 (a)(1)(A).................................................................................... vi

FED. R. APP.32(a)(6)........................................................................................ 23

FED. R. APP.32(a)(7)(B)(iii) ............................................................................ 23

FED. R. CIV. P. 8(a)(2). ...................................................................................... 9

FED. R. CIV. P. 12(b)(6). ............................................... 3, 4, 6, 7, 8, 9, 10, 12, 13, 16, 17, 21

## STATUTES

28 U.S.C. § 1332. ........................................................................................ vi, 11

UTAH CODE ANN. §78B-6-701, et seq............................................................... 21

UTAH CODE ANN. §78B-6-703(1) et seq. ...................................................... 11, 21

UTAH CODE ANN. §78B-6-706. ...................................................................... 3, 14

iv

# IV. STATEMENT OF RELATED CASES

There are no related cases to this litigation.

# V. JURISDICTIONAL STATEMENT

The basis for the District Court's jurisdiction in this matter lies with that court's diversity jurisdiction, granted under 28 U.S.C. § 1332. Plaintiff/Appellant Gerry Adams is a resident of Utah. Defendant/Appellee Caldera Medical, Inc., is incorporated in California, with its principal place of business in California as well. Defendant/Appellee American Medical System, Inc., is a corporation, incorporated in the state of Delaware, with its principal place of business in Minnesota.

The basis for the Circuit Court's jurisdiction lies in FED. R. APP. 4 (a)(1)(A), as it is a timely appeal of a final order of the District Court, which disposed of Plaintiff/Appellant's case. The Court granted the Motions to Dismiss of Defendants/Appellees on April 28, 2014, thus ending Plaintiff/Appellant's case. A Notice of Appeal was timely filed with the District Court on May 27, 2014.

## VI. STATEMENT OF ISSUE PRESENTED FOR REVIEW

Under the Utah Products Liability Act, one must bring a claim for products liability within two years from the date they knew or should have known the harm and its cause. Plaintiff/Appellant Gerry Adams did not know that the defective pelvic mesh implanted in her was the cause of her ongoing medical complications until June 10, 2013. She filed suit on July 25, 2013. Are her claims time-barred as a matter of law, as the District Court ruled?

## VII. STATEMENT OF THE CASE

This case deals with a medical injury suffered by Plaintiff/Appellant, Gerry A. Adams ("Ms. Adams") as a result of a defective product. The product, a Desera Sling ("the Sling") was manufactured by Defendant Appellee Caldera Medical, Inc.[1] ("Caldera"), pursuant to a licensing agreement between Caldera and American Medical System ("AMS").[2] The licensing agreement between Caldera and AMS was executed as the result of 2005 litigation between the two companies.[3]

The Sling was surgically implanted into Ms. Adams' pelvic region to cure her diagnosed urinary stress incontinence.[4] After implantation of the Sling, on or about November 2, 2007, Ms. Adams consulted her physician because she was in severe pain and was suffering from vaginal bleeding, caused by the Sling.[5] The consulting physician found that a portion of the Sling was now migrating out of Ms. Adams' vagina.[6] The physician recommended, "as much as possible, the sling should be excised."[7] On or about December 28, 2007, Ms. Adams was required to

---

[1] *See* Ms. Adams' Amended Complaint, ¶ 11, Appendix, p. A-26.
[2] *Id.* at ¶ 15, p. A-27.
[3] *Id.* at ¶¶ 15-19, p. A-26.
[4] *Id.* at ¶ 53, p. A-33.
[5] *Id.* at ¶ 55, p. A-33.
[6] *Id.* at ¶¶ 55-56, p. A-33.
[7] *Id.* at Exhibit B, p. A-59.

1

undergo a second surgery to "excise" the Sling as much as possible. The physician removed nearly 2 cm of the Sling.[8]

However, at this time, the consulting physician did not inform Ms. Adams that the Sling, itself and its entirety was defective. The consulting physician, at no time, recommended that the Sling in its entirety be removed because it was a defective product.

In fact, the one of Ms. Adams' physicians, Dr. Warshawsky, specifically recommended the remaining portions of the Sling should be left implanted, as it was still providing her with "good urinary control."[9] Between this second surgery and 2013, Ms. Adams continued to have medical issues, such as urinary tract infections, but at no time was she informed by her physicians that the cause of these medical complications was the Sling.[10] Any attribution by Ms. Adams and her physicians of the Sling as the cause of medical complications which occurred before June 10, 2013, was only in hindsight.

On June 10, 2013, Ms. Adams visited a new physician, Doctor Judith Kirstein, who told her that her past health problems were related to the Sling, and that the Sling in its entirety was defective and needed to be removed from her

---

[8] *Id* at Exhibits C, D, E, and F, pp. A-60 to A-78.
[9] *Id.* at Exhibit C, p. A-60.
[10] *Id.* at ¶¶ 58-65, p. A-34.

body.[11] This was the first time she learned that the Sling, in its entirety, was the cause of the medical harms she had experienced since 2007.[12]

On July 27, 2013, Ms. Adams filed suit against Caldera and AMS.[13] In both her initial Complaint and her Amended Complaint, she alleged several causes of action, including products liability against both Caldera and AMS.[14] Ms. Adams' Amended Complaint contained several exhibits, numbered A-F which were incorporated by reference into the body of the Complaint.[15] Exhibit F was the report by her physician, on June 10, 2013 which provided Ms. Adams the knowledge that the Sling was defective and it needed to be removed from her, in its entirety.[16]

On October 11, 2013, Caldera moved to Dismiss Ms. Adams' cause of action under      Rule 12(b)(6) of the Federal Rules of Civil Procedure.[17] In support of its Motion, Caldera argued that Ms. Adams' claims were time-barred under the two year statute of limitations set forth by the Utah Products Liability Act ("UPLA"), § 78B-6-706 (2008).[18]

---

[11] *Id.* at Exhibit G, p. A-72.
[12] *Id.*
[13] *See* Plaintiff's Complaint, Appendix, p. A-9.
[14] *Id.*; *see also* Plaintiff's Amended Complaint, Appendix, p. A-25.
[15] *See* Plaintiff's Amended Complaint, Appendix, p. A-25.
[16] *See* Exhibit F to Plaintiff's Amended Complaint, Appendix, p. A-72.
[17] *See* Motion to Dismiss by Caldera, Appendix, p. A-239.
[18] *Id.*

On December 2, 2013, AMS filed a similar Motion to Dismiss under Rule 12(b)(6), citing the alleged expiration of the statute of limitations.[19] AMS also argued that they were not the manufacturer of the sling, and thus bore no liability.[20]

Both motions to dismiss argued that Ms. Adams' knew, or should have known that the Sling was the cause of her medical problems as early as 2007, despite her own physicians not knowing this.[21] Caldera and AMS argued that, as a result of this imputed knowledge, the time to file suit ran out in 2009, nearly four years before Ms. Adams filed her cause of action.[22]

In her opposition to the motions to dismiss by Caldera and AMS, Ms. Adams argued that her complaints and the exhibits, incorporated by reference, demonstrate that she did not gain the knowledge of the defective nature of the Sling until 2013.[23] The attribution of the Sling to her past medical problems experienced between 2007 and 2013 was a result of hindsight.[24] To impute the

---

[19] *See* Motion to Dismiss by AMS, Appendix, p. A-208.
[20] *Id.*
[21] *See* Motion to Dismiss by Caldera, Appendix, p. A-239; Motion to Dismiss by AMS, Appendix, p. A-208.
[22] *Id.*
[23] *See* Ms. Adams' Response in Opposition to Motion to Dismiss by AMS, Appendix, p. A-273; Ms. Adams Response in Opposition to Motion to Dismiss by Caldera, Appendix, p. A-293.
[24] *Id.*

knowledge that the Sling was defective in 2007, Ms. Adams would have had to have greater knowledge than her own treating physicians.[25]

After both Motions to Dismiss were fully briefed by the parties, the Court issued a ruling on April 28, 2014.[26] In its Ruling and Order, the District Court dismissed Ms. Adams' cause of action as time-barred by the UPLA.[27] The Clerk of the District Court entered a judgment against Ms. Adams and for Caldera and AMS on April 29, 2014.[28] Ms. Adams filed her Notice of Appeal on May 27, 2014.[29]

---

[25] *Id.*
[26] *See* Memorandum Decision and Order on Pending Motions, Appendix, p. A-326.
[27] *Id.*
[28] *See* Judgment in Civil Case, Appendix, p. A-339.
[29] *See* Notice of Appeal, Appendix, p. A-340.

## VIII. SUMMARY OF ARGUMENT

The Utah Products Liability Act requires two discoveries before the time starts to run on an action for a defective device. First, the aggrieved party must discover the existence of a harm. Second, the claimant must discover that a defective product was the cause of the harm. Ms. Adams did not learn that the Sling was defective, and thus the cause of her medical harms until June 10, 2013. She filed suit on July 25, 2013, well within the two-year statute of limitations. Any attribution to the Sling as the cause of Ms. Adams' medical problems from 2007 to 2013 was hindsight, knowledge gained after the July 10, 2013 diagnosis. Prior to 2013, Ms. Adams' physicians recommended leaving the Sling implanted, as it was still performing a function. The District Court erred, as a matter of law in holding that Ms. Adams had knowledge of the harm and that the defective Sling was the cause of that harm in 2007. At the very least, Ms. Adams, through the allegations in her Amended Complaint and the exhibits she attached to it, created a fact issue as to when the statute of limitations started running, and thus a ruling on a 12(b)(6) motion in favor of Caldera and AMS was inappropriate on the part of the District Court and an error, as a matter of law. Accordingly, the Court should reverse the ruling of the District Court in dismissing Ms. Adams' case, and remand this matter for further proceedings.

6

# IX. ARGUMENT

## I.    The standard of review in this case is *de novo*.

The sufficiency of a complaint is a question of law. Thus, the Court reviews *de novo* the District Court's grant of a motion to dismiss pursuant to 12(b)(6).[30] A 12(b)(6) motion should not be granted "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief."[31] All well-pleaded factual allegations in the complaint are accepted as true, and viewed in the light most favorable to the nonmoving party.[32]

When a federal court reviews the sufficiency of a complaint under Rule 12(b)(6), especially before the commencement of discovery, its task is a limited one.[33] The issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims.[34] Indeed, it may appear on the face of the pleadings that a recovery is very remote and unlikely, but that is not the standard a court uses.[35] Moreover, it is well established that, in considering a motion to dismiss, whether on the ground of lack of jurisdiction over the subject

---

[30] *See Bangerter v. Orem City Corp.*, 46 F.3d 1491, 1502 (10th Cir. 1995); *Housley v. Dodson*, 41 F.3d 597, 598 (10th Cir. 1994).

[31] *Conley v. Gibson*, 355 U.S. 41, 45-46, (1957); *Ash Creek Mining Co. v. Lujan*, 969 F.2d 868, 870 (10th Cir. 1992).

[32] *Id.*

[33] *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974).

[34] *Id.*

[35] *Id.*

matter or for failure to state a cause of action, the allegations of the complaint should be construed favorably to the pleader.[36]

In this case, there were enough allegations contained in, and incorporated into Ms. Adams' Amended Complaint to create, at the very least, a factual issue as to when Ms. Adams knew or should have known about the cause of her harm, the Sling. In reaching its decision, the District Court chose to "cherry pick" some facts from the Amended Complaint of Ms. Adams, and ignore others, when it should have construed all facts in Plaintiff's favor. Due to this approach, the District Court erred as a matter of law when it granted the motions to dismiss of Caldera and AMS under Rule 12(b)(6).

## II. Ms. Adams alleged sufficient facts in her complaints under *Twobly* and *Iqbal* to put Caldera and AMS on notice of the claims brought against them, including when Ms. Adams first had notice of her claims.

A motion to dismiss under Rule 12(b)(6) asks a court to look at the pleadings and decide whether the plaintiff is entitled to relief.[37] Because the District Court determined that Ms. Adams, under Rule 12(b)(6) was not entitled to relief due to the expiration of the statute of limitations, it is important to review the pleading standards required in federal court.

---

[36] *Lujan*, 969 F.2d at 870.
[37] *Bangerter*, 46 F.3d at 1502.

### 1.     Ms. Adams' Amended Complaint was sufficient under both *Twombly* and Iqbal.

When considering a motion to dismiss under Rule 12(b)(6), a court should assume the veracity of the plaintiff's allegations.[38] Next, after assuming the allegations are correct, the court then should determine whether those allegations plausibly give rise to an entitlement to relief.[39] Determining whether a complaint states a claim for which relief can be granted is a context-specific task, which requires the reviewing court to draw on its judicial experience and common sense.[40] Rule 8(a)(2) of the Federal Rules of Civil Procedure requires "a short and plain statement of the claim showing that the pleader is entitled to relief," to provide a defendant fair notice of what the claim is and the grounds upon which it rests.[41]

While a complaint attacked by Rule 12(b)(6) does not need to contain detailed factual allegations, there must be enough facts pleaded to raise a right to relief above the speculative level.[42] Ms. Adams met this burden. A well-pleaded

---

[38] *Id.*
[39] *Id.*
[40] *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009).
[41] Conley v. Gibson, 355 U.S. 41, 47, (1957).
[42] *See Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

complaint may proceed even if it appears "that a recovery is very remote and unlikely."[43]

In their Motions to Dismiss both Caldera AMS placed too great of an emphasis on the *Twombly* and *Iqbal* cases. Both matters dealt with complex underlying causes of action brought under federal law.[44] The cause of action plead in *Twombly* dealt with alleged violations of the Sherman Antitrust Act, while *Iqbal* dealt with qualified immunity of a former Attorney General.[45] Both cases required heightened pleading to survive a 12(b)(6) motion. This heightened pleading is far beyond what is required of Ms. Adams, who pleaded a basic tort cause of action under Utah tort law. In both the *Twombly* and *Iqbal* cases, the plaintiffs failed to adequately plead specific facts germane to their respective causes of action, resulting in proper dismissal.[46]

A heightened standard of pleading is not required in this case. Ms. Adams' claims are based on basic Utah tort law.[47] In her Amended Complaint, Ms. Adams pled sufficient facts, and incorporated further in her exhibits facts to survive a motion to dismiss under Rule 12(b)(6).  At the very least, there exists a genuine

---

[43] S*cheuer v. Rhodes*, 416 U.S. 232, 236 (1974).
[44] S*ee Twombly*, 550 U.S. at 549 (alleged violations of the Sherman Antitrust Act); see also *Iqbal*, 556 U.S. at 662. (whether the former Attorney General was entitled to qualified immunity from a civil lawsuit).
[45] *Id.*
[46] *Id.*
[47] *See* Amended Complaint, Appendix, p. A-25.

issue of fact as to when she knew or should have known about the harm caused to her by the Sling, making dismissal inappropriate.[48] Specifically, in her Amended Complaint, Ms. Adams showed that her claim had facial plausibility because she pleaded factual content that allows the Court to draw the reasonable inference that both Caldera and AMS are liable for their misconduct alleged and that Ms. Adams made the claims within the time allowed under the applicable statute of limitations.[49]

### 2.    Ms. Adams' claims are based on Utah tort law.

In this case, he District Court sat in diversity jurisdiction under 28 U.S.C. § 1332.  As such, Ms. Adams' claims are predicated on Utah substantive law.[50] Ms. Adams' theory of liability against Caldera and AMS is predicated on common law tort claims, supplemented by the Utah Products Liability Act ("UPLA").[51]

To properly state a claim under the UPLA and common law, a plaintiff has to allege, facts that demonstrate: 1) the defendant was a designer, manufacturer or

---

[48] *Id.*

[49] *Id.*; *See Iqbal*, 556 U.S. at 677.

[50] *See Erie Railroad Co. v. Tompkins,* 304 U.S. 64 (1938).

[51] *See* UTAH CODE ANN. §78B-6-703(1) *et seq.* The UPLA does not create a cause of action. It sets limits on any cause of action created by some other source of law. It states that in a products liability suit, a product will be regarded as defective only if at the time of sale, the product was "unreasonably dangerous," as defined by subsection (2) of the statute. The statute thus imposes a necessary condition for a cause of action. The statute does not state what is sufficient for a cause of action. Because Utah does not have another statute setting forth the elements of a products liability cause of action, the sufficient conditions for such a cause of action must come from the common law. *See Brown v. Sears, Roebuck & Co.*, 328 F.3d 1274, 1278 (10th Cir. 2003).

original seller; 2) there was a defect or defective condition in the product which made the product unreasonably dangerous to the user or consumer; and 3) injury occurred as a direct or proximate result of the use of the product.[52] Ms. Adams met the requirements imposed by the UPLA, and has pleaded cognizable claims that her cause of action arose within the time limits imposed by the relevant statute of limitations.

### 3.    Incorporation by reference is allowed by the District Court.

Much of background to Ms. Adams' factual allegations was provided in the exhibits attached to her Amended Complaint.[53]  There is no doctrine, ruling, nor local rule for the United States District Court for the District of Utah, or in Utah State Courts which forbid incorporation by reference in pleadings. In *GFF Corp. v. Associated Wholesale Grocers*, the 10th Circuit held that attachment of a document as an exhibit to a complaint, even if not explicitly incorporated by reference, requires a court to consider it in a light most favorable to the non-moving party when considering a 12(b)(6) motion.[54]

---

[52] *Id.*; *see also Brown v. Sears, Roebuck & Co.*, 328 F.3d 1274, 1279 (10th Cir. 2003).

[53] *See* Ms. Adams' Amended Complaint and exhibits, pp. 25-79.

[54] 130 F.3d 1381, 1384-85 (10th Cir. 1997); *see also Romani v. Shearson Lehman Hutton*, 929 F.2d 875, 879 n.3 (1st Cir. 1991); *Cortec Indus., Inc. v. Sum Holding L.P.*, 949 F.2d 42, 48 (2d Cir. 1991); *Pension Benefit Guar. Corp. v. White Consol. Indus., Inc.*, 998 F.2d 1192, 1196-97 (3d Cir. 1993); *Venture Assoc. Corp. v. Zenith Data Systems Corp.*, 987 F.2d 429, 431 (7th Cir. 1993); *New Beckley Mining Corp. v. United Mine Workers or Amer.*, 18 F.3d 1161, 1164  (4th Cir. 1994); *Branch v. Tunnell*, 14 F.3d 449, 453-54 (9th Cir. 1994); *Weiner v. Klais & Co., Inc.*,

Specifically, Ms. Adams in her Amended Complaint incorporated by reference Exhibits A through G.[55] These exhibits are the factual background which underscores Ms. Adams' complaint. None of these exhibits show that Ms. Adams had knowledge that the Sling was the cause of her injury, until her meeting with Doctor Judith Kirstein on June 10, 2013.[56] The knowledge that the Sling had been the cause of Ms. Adams' medical complications from 2007 through 2013 was knowledge gained after the fact, not in 2007. In 2007, her physician did not recommended removal of the Sling from Ms. Adams, and in fact, recommended that it remain implanted, as it continued to provide some help to her.[57] Ms. Adams has presented a factual issue for the finder-of-fact to consider, which is beyond the purpose of a 12(B)(6) motion.

### III. Ms. Adams' claims are not barred by the two year statute of limitations.

The District Court erred when it ruled that Ms. Adams' causes of action against Caldera and AMS were barred by the two year statute of limitations.[58] The relevant statute of limitations in this case is provided under Utah state law. Under the UPLA, a claimant must make two discoveries before the time starts to run on

---

108 F.3d 86, 89 (6th Cir. 1997); *Brooks v. Blue Cross & Blue Shield of Florida, Inc.*, 116 F.3d 1364, 1369 (11th Cir. 1997).

[55] *Id.*

[56] *See* Exhibits A-G to Ms. Adams' Amended Complaint, Appendix, pp. A-45-72.

[57] *See* Exhibit C to Ms. Adams' Amended Complaint, Appendix, p. A-60.

[58] *See* Memorandum and Decision, Appendix, p. A-326.

an action for a defective device. First, the aggrieved party must discover the existence of a harm and second must discover that a defective product was the cause of the harm.[59] In particular, the statute states:

> A civil action under this part shall be brought within two years from the time the individual who would be the claimant in the action discovered, or in the exercise of due diligence should have discovered, **both the harm and its cause**.[60]

Because Ms. Adams claims are under Utah State law, the Court must look to state court interpretations regarding of when, under Utah law, a statute of limitation begins to run. A statute of limitations only begins to run "upon the happening of the last event necessary to complete the cause of action."[61] Thus, a Plaintiff must discover both the harm, and the cause of that harm, before the two year time period starts.[62] The Utah Supreme Court, in dealing with a similar statute of limitations with regard to wrongful death has held:

> The governing policy in this area, as declared by the United States Supreme Court, is that statutes of limitations "are designed to promote justice by preventing surprises through the revival of claims that have been allowed to slumber until evidence has been lost, memories have faded, and witnesses have disappeared." *Order of Railroad Telegraphers v. Railway Express Agency, Inc.*, 321 U.S. 342, 348-49, 88 L. Ed. 788, 64 S. Ct. 582 (1944). In furtherance of that policy, the

---

[59] UTAH CODE ANN. §78B-6-706.
[60] *Id.*
[61] *Myers v. McDonald*, 635 P.2d 84, 86 (Utah 1981); Russell Packard Dev. Inc. v. Carson, 108 P.3d 741, 746 (Utah 2005).
[62] *See Daniels v. Gamma West Brachytherapy*, LLC., 221 P.3d 256, 266 (Utah 2009). (interpreting a similar discovery rule under the Utah Health Care Malpractices Act).

14

general rule is that a cause of action accrues upon the happening of the last event necessary to complete the cause of action. Under that rule, mere ignorance of the existence of a cause of action does not prevent the running of the statute of limitations.

There are a number of exceptions to this general rule. In some enumerated areas of the law, our Legislature has adopted the discovery rule by statute so that the limitations period does not begin to run until the discovery of facts forming the basis for the cause of action.[63]

The statute of limitations enacted under the UPLA uses the legislatively-created discovery rule. The time begins to run when Ms. Adams discovered the harm and its cause.[64] Statutory discovery rules, or statutes of limitations that have internal discovery rules, place a heavy, fact-intensive burden on the defendant raising the statute of limitations as a defense to the action. According to the Utah Supreme Court, the defendant has the burden to prove that the plaintiff discovered the triggering event, using the facts before the court. A court often has insufficient facts to grant a Motion to Dismiss based solely on the complaint and submit the question of discovery of the harm to the fact finder.[65]

In this case, according to the facts before the Court, Ms. Adams was unaware of the cause of the harm until she met with Doctor Judith Kirstein on June

---

[63] *Myers*, 635 P.2d at 86.
[64] UTAH CODE ANN. §78B-6-706.
[65] *Daniels*, 266 P.3d at 266.

10, 2013.[66] At that time, Dr. Kirstein informed Ms. Adams, for the first time, that the infections and other health complications she was experiencing were likely due to the sling system and that more of the mesh was protruding thru her vaginal roof.[67] Fifteen days later, on June 25, 2013, Ms. Adams filed her complaint against Caldera and AMS.[68] Ms. Adams' claims were timely filed.

## IV.    Caldera and AMS must meet a high burden to obtain dismissal under Rule 12(b)(6).

In order for the dismissal by the District Court under Rule 12(b)(6) to stand, there must be no way for Ms. Adams to recover, even when considering all of her allegations and exhibits in her Amended Complaint as true. In this case, the District Court erred in essentially making a fact-finding determination that Ms. Adams should have known of the harm caused to her by the Sling as early as 2007, when there were facts to the contrary.[69]

Moreover, in determining that Ms. Adams should have known that the Sling was the cause of her harm in 2007, the District Court is concluding that Ms. Adams should have known more than her treating physicians at the time. [70] This conclusion is illogical, and it appears that the District Court is imputing knowledge

---

[66] *See* Exhibit G to Ms. Adams' Complaint, Appendix, p. A-72.
[67] *Id.*
[68] *Id.*
[69] *See* Memorandum and Decision, Appendix, p. A-332.
[70] *See* Plaintiff's Amended Complaint, Exhibit A, B, & C, Appendix, pp. A-45 through A-78.

to Ms. Adams via the unfair prism of hindsight, as lay people are apt to follow the advice of their professional physicians. At the very least, the arguments raised by Caldera and AMS are an issue of act, which is inappropriate for a 12(b)(6) motion.

The District Court appears to have used Caldera's and AMS' facts from their respective motions to dismiss to reach a conclusion that Ms. Adams' claims were outside the statute of limitations, when all of her allegations should have been considered true for purposes of deciding the motions.[71] By heeding some facts, while ignoring others, the District Court went far beyond what a court should do in deciding a 12(b)(6) motion against a party. The District Court, when presented with a genuine factual dispute, decided to use only certain facts in reaching its decision, and thus committed error as a matter of law.

### V.    To affirm dismissal would impute knowledge on Ms. Adams that even her physicians did not have in 2007.

In their Motions to Dismiss, both Caldera and AMS assert that Ms. Adams knew the cause of the harm on December 28, 2007.[72] This assertion is wholly unsupported by the facts and, the medical records Ms. Adams attached and incorporated into her Amended Complaint. For example, Exhibit C to Ms. Adams' Amended Complaint states:

---

[71] *See* Memorandum and Order, Appendix, pp. A-330 to 335.
[72] *See* Caldera's Motion to Dismiss, Appendix, p. A-239.

[Dr. Warshawsky] suggested removal of the sling, at least the portion that was avulsed, and leaving the rest of the sling in as the patient still had good urinary control.[73]

The District Court erred by expecting Ms. Adams to know that the Sling system was defective, and the cause of her injuries, when the medical professionals recommended keeping the Sling implanted. The District Court, in its Ruling ignored this fact. There is nothing in the medical records attached to her Amended Complaint that suggest Ms. Adams had knowledge or should have known that the Sling was defective prior to June 2013, that it was the cause of her injuries, or that it would cause her harm if it was allowed to remain in place. In hindsight, Ms. Adams later discovered, based on statements made to her by her Doctor on June 10, 2013, that her pain, discomfort, infections and other injuries were caused by the defective sling system.[74]

Caldera and AMS's inability to meet their burden is further demonstrated by the fact that Ms. Adams had multiple doctors' appointments with multiple doctors prior to June 10, 2013, at which she was not advised that the sling was defective, or the cause of her health problems.[75] For example, when Ms. Adams had a follow-up appointment with Doctor Kevin Seufert, on January 1, 2008, she was not informed

---

[73] *See* Exhibit C to Ms. Adams' Amended Complaint, Appendix, p. A-60.
[74] *See* Exhibit G to Ms. Adams' Amended Complaint, Appendix, p. A-72.
[75] *See* Exhibits A-G to Ms. Adams' Amended Complaint, Appendix, pp. A-45-72.

that the mesh was the cause of infection or her continued incontinence or that the Desara sling system was defective.[76] On July 11, 2009, Ms. Adams presented to the emergency room at Jordan Valley Hospital with pain in her mid-section.[77] Again, she was not informed that the sling was defective, that the infections, the pain, the discomfort or the continued incontinence were caused by the defective Sling.[78]

Caldera and AMS, through their Motions to Dismiss asked the District Court to impute knowledge to Ms. Adams that even her own treating physicians did not have. The District Court, in imputing that knowledge and dismissing Ms. Adams' cause of action under Rule 12(b)(6) went far beyond what a court should do when presented with those circumstances.[79]

In short, the facts in the medical records, as incorporated into the complaint, show that Ms. Adams filed her complaint within 15 days of learning the cause of her injuries, well within the two-year statute of limitations.[80] Caldera and AMS did not meet their burden to obtain dismissal under Rule 12(b)(6). Caldera and AMS have not shown that Ms. Adams discovered the harm and its cause more than two

---

[76] *See* Exhibit D to Ms. Adams' Amended Complaint, Appendix, pp. A-63.
[77] Exhibit C to Ms. Adams' Amended Complaint, Appendix, p. A-60.
[78] *Id.*
[79] *See* Memorandum Decision and Order, Appendix, p. A-326.
[80] *See* Ms. Adams' initial Complaint, Appendix, p. A-9.

years prior to filing her complaint. As a result of this, the District Court erred in granting the Motions to Dismiss of Caldera and AMS.

## X. CONCLUSION

The District Court erred, as a matter of law when it dismissed Ms. Adams' cause of action against Caldera and AMS under the statute of limitations. Ms. Adams presented enough facts in her Amended Complaint and the attached exhibits, to at the very least, make a factual issue about when she knew or should have known that the Sling was both defective and the cause of her harm. Specifically, Exhibit C, incorporated into the Amended Complaint, stated that Dr. Warshawsky recommended that the rest of the sling should remain in place after the December 28, 2007 surgery. Nothing in the record suggested that Ms. Adams or her physicians discovered that the sling was defective, or the cause of her injuries, prior to June 10, 2013. Ms. Adams' medical treatment for various ailments from 2007 to 2009 contain no notes, no statements, no suggestions that Ms. Adams, let alone any doctor, let alone Ms. Adams, discovered the Sling was defective prior to June 10, 2013. The facts alleged in the complaint, upon which Caldera must solely rely, show that the first time Ms. Adams discovered the cause of the harm was on June 10, 2013, and that her complaint was timely filed 15 days thereafter.

The District Court erred, as a matter of law, when it essentially made a factual determination regarding when Ms. Adams knew, or should have known that the Sling was defective. In doing so, the Court went far beyond its charge in ruling on the 12(b)(6) motions from Caldera and AMS. As such, this Court should, in its *de novo* review of the District Court's ruling, should set aside the dismissal of Ms. Adams' case and remand the matter for further consideration.

Respectfully submitted this 28<u>th</u> day of July, 2014.

HUNTSMAN, LOFGRAN & FULLER, PLLC

/s/ David M. Wilkins
DAVID M. WILKINS
Counsel for Appellant Gerry A. Adams
623 East Fort Union Blvd., Suite 201
Midvale, Utah 84047
(801) 838-8900
david@huntsmanlofgran.com

## XI. STATEMENT REGARDING ORAL ARGUMENT

Plaintiff/Appellant, Gerry A. Adams, in accordance with Rule 34 of the Federal Rules of Appellate Procedure, and 10th Circuit Local Rule 34, hereby requests Oral argument in this case. Oral argument would greatly assist the Court in considering the issues raised in this appeal; specifically, application of Utah's Statute of Limitations, UTAH CODE ANN. § 78B-6-701, *et seq.*, the Utah Product Liability Act. Oral argument will also assist the Court with the record herein.

## XII. CERTIFICATE OF COMPLIANCE WITH RULE 32(a)
### Certificate of Compliance with Type-Volume Limitation, Typeface Requirements, and Type Style Requirements

1.     This brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B) because this brief contains 5,117 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii).

2.     This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because this brief has been prepared in a proportionally spaced typeface using Microsoft Word in Times New Roman Font, 14 point size.

Submitted this 28th day of July, 2014.


HUNTSMAN, LOFGRAN & FULLER, PLLC

/s/ David M. Wilkins
Huntsman, Lofgran & Fuller, PLLC
623 East Fort Union Blvd., Suite 201
Midvale, UT 84047
david@huntsmanlofgran.com
(801) 838-8900

## XIII. CERTIFICATE OF DIGITAL SUBMISSION

I hereby certify that with respect to the foregoing Brief for Plaintiff-Appellant:

(1) all required privacy redactions have been made per 10th Cir. R. 25.5;

(2) The electronic version of this brief is identical to the text version in the paper copies filed with the court;

(3) the digital submissions have been scanned for viruses with the most recent version of a commercial virus scanning program, Trend Micro Titanium Internet Security version 8.4/10 as of July 28, 2014, and according to the program are free of viruses.

HUNTSMAN, LOFGRAN & FULLER, PLLC

/s/ David M. Wilkins
Huntsman, Lofgran & Fuller, PLLC
623 East Fort Union Blvd., Suite 201
Midvale, UT 84047
david@huntsmanlofgran.com
(801) 838-8900

## XIV. CERTIFICATE OF SERVICE

      I hereby certify that I caused the foregoing Brief for Plaintiff-Appellant to be served on counsel for Defendants-Appellees via the Notice of Docket Activity generated by the Court's electronic filing system (i.e., CM/ECF) and via electronic mail pursuant to Local Appellate Rules 31.1(d) and 113.4(a) to the following:

        Lisa Marie Baird, lbaird@reedsmith.com
        Margaret A. Grignon, mgrignon@reedsmith.com
        David E. Stanley, dstanley@reedsmith.com
        Maralyn M. English, mme@scmlaw.com
        Camille N. Johnson, cnj@scmlaw.com
        Michael J. Miller, mmiller@strongandhanni.com
        Beth Susan Rose, brose@sillscummis.com
        William Roy Stuart, III, wstuart@sillscummis.com

Date: July 28, 2014

                /s/ Ramiro Honeywell
                Ramiro Honeywell

# ADDENDUM

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF UTAH

| | |
|---|---|
| GERRY A. ADAMS,<br><br>                  Plaintiff,<br><br>v.<br><br>AMERICAN MEDICAL SYSTEM, INC.,<br>CALDERA MEDICAL, INC. and JOHN<br>DOES 1–10,<br><br>                  Defendants. | MEMORANDUM DECISION AND<br>ORDER ON PENDING MOTIONS<br><br><br><br>Case No. 2:13-CV-604 TS |

       This matter is before the Court on Defendant Caldera Medical, Inc.'s ("Caldera") Motion to Dismiss Plaintiff's Complaint, Defendant American Medical System Inc.'s ("AMS") Motion to Dismiss, and AMS's Motion for Rule 11 Sanctions.[1]  For the reasons discussed more fully below, the Court will grant Caldera's Motion to Dismiss, grant in part and deny in part AMS's Motion to Dismiss, and deny AMS's Motion for Sanctions.

## I.  BACKGROUND

       Plaintiff is a citizen of the State of Utah.  Defendant Caldera is based out of and incorporated in California.  Defendant AMS is incorporated in Delaware and has its principal place of business in Minnesota.

       This suit stems from Plaintiff's surgical implantation with a Desara Sling System (referred to hereinafter as the "Desara Sling" or the "product") on or about July 7, 2007.  The

---

[1] Docket Nos. 18, 42, 43.

Desara Sling is a vaginal mesh sling used for the treatment of pelvic organ prolapse and stress urinary incontinence.

The Desara Sling is designed, manufactured, and marketed by Caldera.  Plaintiff alleges, however, that the Desara Sling contains essential design features and technology designed and owned by AMS.  These same allegations were the basis for a patent infringement suit brought by AMS against Caldera in 2005.  That suit resulted in a settlement between AMS and Caldera.  According to Plaintiff, AMS and Caldera entered into a royalty bearing license agreement, which allowed Caldera to continue to market the Desara Sling without threat of litigation from AMS.

On November 2, 2007, Plaintiff consulted her physician because she was in severe pain and was suffering from vaginal bleeding caused by the Desara Sling.  The consulting physician found that a portion of the product had migrated out of place.  The physician recommended that, "as much as possible, the sling should be excised."[2]  On December 28, 2007, Plaintiff underwent a second surgery where a section of the Desara Sling was removed.

Plaintiff's second surgery removed as much of the Desara Sling as possible.  However, Plaintiff's stress urinary incontinence was worse than before implantation of the product.  Plaintiff continued to experience complications from the product including infections, pain, and loss of energy.  In July 2009, Plaintiff suffered from a urinary tract infection so severe that she required hospitalization.  Plaintiff alleges that this infection was caused by the remaining portion of the Desara Sling.

Plaintiff's current physician ultimately recommended that the Desara Sling be completely removed because it continued to migrate from its place of implantation, was harboring

---

[2] Docket No. 31 Ex. B, at 1.

2

infections, and was adversely affecting Plaintiff's health and comfort. Plaintiff alleges that she continues to suffer from incontinence as a result of the Desara Sling.

## II. STANDARD OF REVIEW

In considering a motion to dismiss for failure to state a claim upon which relief can be granted under Rule 12(b)(6), all well-pleaded factual allegations, as distinguished from conclusory allegations, are accepted as true and viewed in the light most favorable to Plaintiff as the nonmoving party.[3] Plaintiff must provide "enough facts to state a claim to relief that is plausible on its face,"[4] which requires "more than an unadorned, the-defendant-unlawfully-harmed-me accusation."[5] "A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.' Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'"[6]

"The court's function on a Rule 12(b)(6) motion is not to weigh potential evidence that the parties might present at trial, but to assess whether the plaintiff's complaint alone is legally sufficient to state a claim for which relief may be granted."[7] As the Court in *Iqbal* stated,

> [O]nly a complaint that states a plausible claim for relief survives a motion to dismiss. Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense. But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not show[n]—that the pleader is entitled to relief.[8]

---

[3] *GFF Corp. v. Associated Wholesale Grocers, Inc.*, 130 F.3d 1381, 1384 (10th Cir. 1997).

[4] *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 547 (2007).

[5] *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

[6] *Id.* (alteration in original) (quoting *Twombly*, 550 U.S. at 557).

[7] *Miller v. Glanz*, 948 F.2d 1562, 1565 (10th Cir. 1991).

"An affirmative defense may be raised in a motion to dismiss for the failure to state a claim 'if the defense appears plainly on the face of the complaint itself.'"[9]  "[W]ith respect to a statute of limitations defense, it may be appropriately resolved on a 12(b) motion 'when the dates given in the complaint make clear that the right sued upon has been extinguished.'"[10]  "'When the dates given in the complaint' support dismissal on statute of limitations grounds, 'the plaintiff has the burden of establishing a factual basis for tolling the statute.'"[11]

"If, on a motion under Rule 12(b)(6) . . . , matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56."[12]  Nevertheless, the Court "'may consider documents referred to in the complaint if the documents are central to the plaintiff's claim and the parties do not dispute the documents' authenticity,'"[13] without converting a motion to dismiss into one for summary judgment.

## III.  DISCUSSION

Defendants move to dismiss Plaintiff's Amended Complaint on several grounds.  Caldera argues that dismissal is appropriate because Plaintiff's claims are barred under the applicable statute of limitations.  AMS also argues that dismissal is appropriate under the statute of

---

[8] *Iqbal*, 556 U.S. at 679 (alteration in original) (citations and internal quotation marks omitted).

[9] *Lee v. Rocky Mountain UFCW Unions & Emp'rs Trust Pension Plan*, 13 F.3d 405, 1993 WL 482951, at *1 (10th Cir. 1993) (unpublished table decision) (quoting *Miller v. Shell Oil Co.*, 345 F.2d 891, 893 (10th Cir. 1965)).

[10] *Id.* (quoting *Aldrich v. McCulloch Props., Inc.*, 627 F.2d 1036, 1041 n.4 (10th Cir. 1980)).

[11] *Id.* (quoting *Aldrich*, 627 F.2d at 1041 n.4).

[12] Fed. R. Civ. P. 12(d).

[13] *Alvarado v. KOB-TV, L.L.C.*, 493 F.3d 1210, 1215 (10th Cir. 2007) (quoting *Jacobsen v. Deseret Book Co.*, 287 F.3d 936, 941 (10th Cir. 2002)).

limitations and further asserts that Plaintiff's Amended Complaint fails to state a claim for relief

against AMS because AMS was not involved in the manufacture or sale of the Desara Sling.

Based on this same argument, AMS moves for sanctions against Plaintiff under Federal Rule of

Civil Procedure 11.

A.    STATUTE OF LIMITATIONS

Because the Court is sitting in diversity jurisdiction, the general rule is that the

substantive law of the State of Utah applies.[14]  The parties both proceed on the assumption that

Utah law should apply to the instant suit, though Caldera does note that it is conceivable that

California law applies.[15]  In any event, the parties agree that there are no significant differences

between Utah and California law as to the issues before the Court.  In light of the parties'

agreement, the Court will apply Utah substantive law.

The relevant statute of limitations is drawn from the Utah Products Liability Act

("UPLA"), codified at Utah Code Ann. § 78B-6-700.  That statute states, in relevant part, that

"[a] civil action under this part shall be brought within two years from the time the individual

who would be the claimant in the action discovered, or in the exercise of due diligence should

have discovered, both the harm and its cause."[16]  The Utah Supreme Court has interpreted this

statute of limitations to encompass "all actions seeking money damages for injury to people or

property resulting from defective products."[17]  Each of Plaintiff's causes of action seeks money

---

[14] *MediaNews Grp., Inc. v. McCarthey*, 494 F.3d 1254, 1260 (10th Cir. 2007) (citing *Ahrens v. Ford Motor Co.*, 340 F.3d 1142, 1145 (10th Cir. 2003)).

[15] *See* Docket Nos. 18, 41, 43.

[16] Utah Code Ann. § 78B-6-706.

[17] *Utah Local Gov. Trust v. Wheeler Mach. Co.*, 199 P.3d 949, 951 (Utah 2008).

5

damages for injuries she suffered as a result of the implantation of the Desara Sling. Thus, Plaintiff's claims are subject to the UPLA statute of limitations.

"By its plain language, the statute begins to run from the date the claimant discovers, or in the exercise of due diligence should have discovered, both the harm and its cause."[18] The majority rule is that the determination of "when a plaintiff knew or with reasonable diligence should have known of a cause of action is a question of fact for the jury. Where the evidence is so clear that there is no genuine factual issue, however, the determination can be made as a matter of law."[19] "[T]he knowledge required of a plaintiff is inquiry notice: a plaintiff need not have a 'confirmed diagnosis' about the causal relation to trigger the running of the statute of limitation."[20] "All that is required to trigger the statute of limitations is sufficient information to put plaintiff on notice to make further inquiry if she harbors doubts or questions."[21]

According to the allegations of Plaintiff's Amended Complaint, she became aware of the fact that a portion of the Desara Sling had migrated out of place by November 2, 2007. At that time, she was in severe pain and was suffering from vaginal bleeding caused by the Desara Sling. Plaintiff alleges that she underwent surgery in December 2007 to remove as much of the Desara Sling as possible. Nevertheless, Plaintiff alleges that her stress urinary incontinence was worse than before implantation of the product and that she continued to experience complications from

---

[18] *McKinnon v. Tambrands, Inc.*, 815 F. Supp. 415, 418 (D. Utah 1993).

[19] *Id.* (citing *Maughan v. SW Servicing, Inc.*, 758 F.2d 1381, 1387 (10th Cir. 1985)).

[20] *Hansen v. Novartis Pharm. Corp.*, No. 2:08-CV-985 DB, 2011 WL 6100848, at *3 (D. Utah Dec. 7, 2011) (citing *McKinnon*, 815 F. Supp. at 420).

[21] *Griffiths-Rast v. Sulzer Spine Tech*, 216 F. App'x. 790, 792–93 (10th Cir. 2007) (unpublished) (citation and internal quotation marks omitted).

the product.  Plaintiff alleges that these complications went so far as to require an emergency

room visit in July 2009.

From these factual allegations and the dates contained therein, the Court can only surmise

that Plaintiff discovered the harm and the cause of that harm, at the latest in November 2007.  At

that point, Plaintiff knew that the Desara Sling had migrated out of place and that she was

suffering harm as a result of that migration.

Contrary to the factual allegations of her Complaint, Plaintiff argues that she did not

discover that the Desara Sling was the cause of her harm until June 10, 2013.  In her briefing,

Plaintiff claims that it was during a doctor's visit at that time that she was first informed that "the

infections and other health complications she was experiencing were likely due to the sling

system and that more of the vaginal mesh was protruding through her vaginal roof."[22]  Nowhere

in Plaintiff's Amended Complaint does she allege that she was informed for the first time on

June 10, 2013, that the infections and health complication she was experiencing were due to the

Desara Sling.  As discussed, the allegations show that Plaintiff was aware of these issues by late

2007.  Furthermore, the documents attached as exhibits to, and referenced in Plaintiff's

Complaint, do not support Plaintiff's argument on this point.

In short, viewing the factual allegations in the light most favorable to Plaintiff, the Court

finds that Plaintiff knew of the harm and the cause of that harm no later than November 2007 and

therefore Plaintiff's claims are barred by the applicable two-year statute of limitations.

The parties do not limit their statute of limitations arguments to the factual allegations of

the Amended Complaint and documents referenced therein.  Included in the parties' arguments

_____

[22] Docket No. 41, at 4 (citing Docket No. 31 Ex. G, at 1).

7

are citations to documents from other cases, medical records, and FDA statements that the parties assert support their various positions. The Court finds that it need not convert Defendants' motions to motions for summary judgment to resolve the statute of limitations issue. But, even were the Court to convert this motion to a motion under Rule 56 and consider all of the evidence provided, it would not change the outcome in this case.

The medical records attached to Plaintiff's Amended Complaint demonstrate that Plaintiff was aware that the Desara Sling had shifted as early as November 2007.[23] The medical records also demonstrate that Plaintiff continued to suffer harm from that period through at least June 2013. The June 11, 2013, letter from Doctor Judith Kirstein supports that conclusion. In that letter, Dr. Kirstein states,

> A few months after [the July 2007 procedure, Plaintiff] began having vaginal symptoms and her surgeon noted erosion of mesh through the vaginal wall. The mesh was trimmed, but she continued to have bouts of foul smelling vaginal discharge, suprapubic and vaginal pain. When I examined her vagina in February 2013, I could feel two pieces of mesh protruding through the vaginal roof. She had no evidence of a vaginal infection at that time, but they are intermittent. I suspect the infections are due to the mesh protruding thru her vaginal roof. The mesh needs to be removed.[24]

Dr. Kirstein's statement is consistent with Dr. Warshawsky's assessment in November 2007 that subsequent to the July 2007 procedure "vaginal bleeding developed associated with malodorous discharge" and Plaintiff's Desara Sling "was noted to be extruding, protruding into

---

[23] Docket No. 31 Ex. B, at 1.

[24] *Id.* Ex. F, at 1.

8

the vaginal canal."[25]  Dr. Warshawsky also stated that "[u]ndoubtedly, as much as possible the

sling will need to be excised."[26]

Plaintiff argues that the early movement and partial removal of the Desara Sling did not

put her on notice of the cause of her harm because Dr. Warshawsky did not recommend the

complete removal of the Desara Sling.  According to Plaintiff, it was only the opinion of Dr.

Kirstein in 2013 that the "mesh needs to be removed" that alerted her to the cause of her harm.

This Court, in *McKinnon v. Tambrands, Inc.*, rejected a plaintiff's argument that "to constitute

'discovery' she must have received what amounts to a 'confirmed diagnosis.'"[27]  As in

*McKinnon*, the Court is not persuaded that Dr. Warshawsky's diagnosis was insufficient to put

Plaintiff on notice of the cause of her harm.  This is particularly true in light of the fact that

Plaintiff continued to suffer from the same symptoms after the December 2007 surgery.

Plaintiff also cites an FDA Public Health Notification released on July 13, 2011, for the

proposition that she could not have discovered the cause of her injury until that time because

Utah law presumes that products approved by government entities are free from defect.  Even

were it convinced that Utah law's deference to the FDA approval process ameliorated the

exercise of due diligence requirement of § 78B-6-706,[28] the Court finds that Plaintiff's argument

would nevertheless fail because the evidence she provides does not support her assertion.  On its

face, the FDA Public Health Notice indicates that it issued an alert as early as October 20, 2008,

warning that there are "complications associated with transvaginal placement of surgical mesh to

---

[25] *Id.* Ex. B, at 1.

[26] *Id.*

[27] *McKinnon*, 815 F. Supp. at 419–20.

[28] *See Grundberg v. Upjohn Co.*, 813 P.2d 89, 96–98 (Utah 1991).

treat Pelvic Organ Prolapse (POP) and Stress Urinary Incontinence (SUI)."[29]  The notification

further provides that what was released on July 13, 2011, was an "UPDATE on Serious

Complications Associated with Transvaginal Placement of Surgical Mesh for Pelvic Organ

Prolapse."[30]  The FDA notice therefore supports the conclusion that Plaintiff should have been

on notice of the cause of her harm, at the latest, by October 20, 2008—the date on which the

FDA issued its original alert.

Based on the foregoing, the Court finds that on the evidence presented, "there is no

genuine dispute as to any material fact" relating to Defendants' statute of limitations defense

"and [they are] entitled to judgment as a matter of law."[31]

B.    SANCTIONS

In addition to moving to dismiss Plaintiff's claims on statute of limitations grounds,

Defendant AMS seeks dismissal for failure to state a claim under 12(b)(6).  Because dismissal is

appropriate on statute of limitations grounds, the remainder of AMS's arguments for dismissal

are moot.  Thus, the only issue remaining before the Court is AMS's request for sanctions.

AMS moves for sanctions pursuant to Federal Rule of Civil Procedure 11(b), arguing that

certain of the factual allegations in Plaintiff's Amended Complaint have no evidentiary support.

Plaintiff contends that her factual allegations are properly supported and argues that AMS's

motion was filed for the improper purpose of seeking dismissal from this case.  Both parties

request an award of attorneys' fees.

---

[29] Docket No. 41 Ex. A, at 1.

[30] *Id.*

[31] Fed. R. Civ. P. 56(a).

10

Pursuant to Federal Rule of Civil Procedure 11(b), an attorney or unrepresented party who presents a pleading, written motion, or other paper to the court "certifies that to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances . . . the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery."[32]  The Tenth Circuit has held that "an attorney's action must be objectively reasonable in order to avoid Rule 11 sanctions," and "[a] good faith belief in the merit of an argument is not sufficient; the attorney's belief must also be in accord with what a reasonable, competent attorney would believe under the circumstances."[33]

Here, AMS argues that Plaintiff violated Rule 11 because certain of the factual contentions contained in her Amended Complaint lack evidentiary support.  Specifically, AMS takes issue with Plaintiff's allegations that (1) "AMS exerted control over Caldera's manufacturing and marketing of the Product during the negotiations of the terms of the settlement agreement entered into regarding the patent infringement case;" (2) "AMS continues to exert a measure of control over the manufacturing and marketing of the Product;" (3) "AMS, through the negotiation process regarding settlement of the patent infringement lawsuit with Caldera, exercised sufficient control over the manufacture, labeling and marketing of the defectively and improperly manufactured Product to be strictly liable;" (4) "AMS defectively and improperly manufactured the Product, rendering it unreasonably dangerous and hazardous to

---

[32] Fed. R. Civ. P. 11(b).

[33] *White v. Gen. Motors Corp., Inc.*, 908 F.2d 675, 680 (10th Cir. 1990).

Ms. Adams, as a matter of law;" and (5) "[t]he Product, offered by Caldera, contained essential design features and technology designed and owned by AMS."[34]

Having reviewed the foregoing allegations in the context of the remainder of Plaintiff's Amended Complaint and considered the parties' arguments thereon, the Court finds that Plaintiff's counsel did not violate their obligations under Rule 11(b).  The parties' dispute with regard to these allegations centers on their differing interpretations of the effect of the settlement agreement between Caldera and AMS and the viability of conflicting legal theories.  Unlike *Henry v. Black*,[35] relied upon heavily by AMS, the Court cannot say in this instance that Plaintiff's allegations are wholly speculative and "fail to meet the requirements of Rule 11."[36]

The Court is not persuaded, however, that AMS's motion is frivolous, filed in bad faith, or for an improper purpose.  For this reason, it will deny Plaintiff's request for attorneys' fees.  In sum, Rule 11 sanctions are not merited in this case.

## IV.  CONCLUSION

Based on the foregoing, it is hereby

ORDERED that Defendant Caldera's Motion to Dismiss Plaintiff's Complaint (Docket No. 18) is GRANTED.  It is further

ORDERED that Defendant AMS's Motion to Dismiss (Docket No. 43) is GRANTED IN PART AND DENIED IN PART AS MOOT, pursuant to the terms of this Order.  It is further

ORDERED that Defendant AMS's Motion for Rule 11 Sanctions (Docket No. 42) is DENIED.  The Clerk of Court is directed to close this case forthwith.

---

[34] Docket No. 31, at 3–4, 12.

[35] No. 2:11-CV-129 TS, 2011 WL 2938450 (D. Utah July 19, 2011).

[36] *Id.* at *2.

12

DATED this 28th day of April, 2014.

BY THE COURT:

_____
TED STEWART
United States District Judge

13